Slip Op. 23-71

# UNITED STATES COURT OF INTERNATIONAL TRADE

BGH EDELSTAHL SIEGEN GMBH,

     **Plaintiff,**

v.

UNITED STATES,

     **Defendant,**

and

ELLWOOD CITY FORGE COMPANY,
ET AL.,

     **Defendant-Intervenors.**

**Before: Claire R. Kelly, Judge**

**Court No. 21-00080**

## OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. Department of Commerce's remand redetermination in the 2018 investigation of the countervailing duty order covering forged steel fluid end blocks from the Federal Republic of Germany.]

Dated: May 9, 2023

Marc E. Montalbine, deKieffer & Horgan, PLLC, of Washington, DC, for plaintiff BGH Edelstahl Siegen GmbH. Also on the brief were Gregory S. Menegaz, Alexandra H. Salzman, and Merisa A. Horgan.

Sarah E. Kramer, Trial Attorney, and Patricia M. McCarthy, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant United States. Also on the brief was Brian M. Boynton, Principal Deputy Assistant Attorney General. Of counsel on the brief was Ayat Mujais, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

Nicole Brunda, Cassidy Levy Kent (USA) LLP, of Washington, DC, for defendant-intervenors Ellwood City Forge Co., Ellwood National Steel Co., Ellwood Quality Steels Co., and A. Finkl & Sons. Also on the brief were Thomas M. Beline, Jack A. Levy, Myles S. Getlan, and Chase J. Dunn.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") remand redetermination pursuant to the court's remand order, see BGH Edelstahl Siegen GmbH v. United States, 600 F. Supp. 3d 1241 (Ct. Int'l Trade 2022) ("BGH I"), on Commerce's final determination in its countervailing duty ("CVD") investigation of forged steel fluid end blocks ("fluid end blocks") from the Federal Republic of Germany ("FRG"). See Final Results of Redetermination Pursuant to Court Remand, C-428-848 (Jan. 9, 2023), ECF No. 48-1 ("Remand Results"); see generally [Fluid End Blocks] from the People's Republic of China, [FRG], India, and Italy, 86 Fed. Reg. 7,535 (Dep't Commerce Jan. 29, 2021) ([CVD] orders, and am. final affirmative [CVD] determination for the People's Republic of China) and accompanying Issues and Decision Mem., C-428-848, PD 293, bar code 4062827-01 (Dec. 7, 2020), ECF No. 15-2; [Fluid End Blocks] from the People's Republic of China, [FRG], India, and Italy, 86 Fed. Reg. 10,244 (Dep't Commerce Feb. 19, 2021) (correction to [CVD] orders). For the following reasons, the court sustains in part and remands in part Commerce's determinations on remand.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its previous opinion ordering remand to Commerce, see BGH I, 600 F. Supp. 3d 1241, and now recounts only those facts relevant to the court's review of the Remand

Results.  In the underlying CVD investigation of fluid end blocks from the FRG covering a period of January 1, 2018 to December 31, 2018, Commerce selected plaintiff BGH Edelstahl Siegen GmbH ("BGH") as a mandatory respondent.  Resp't Selection Mem. at 1, C-428-848, PD 54, bar code 3938815-01 (Feb. 4, 2020).  Commerce determined that the Government of Germany provided countervailable subsidies through several programs, including the Electricity Tax Act, the Energy Tax Act, and the KAV Program, inter alia.[1]  Issues and Decision Mem. at 6–8, C-428-848, PD 293, bar code 4062827-01 (Dec. 7, 2020), ECF No. 15-2; see also Post-Prelim. Analysis [CVD] Investigation: [Fluid End Blocks] from [FRG] at 6–19, C-428-848, PD 271, bar code 4043279-01 (Oct. 21, 2020); Decision Mem. Prelim. Affirmative Determination [CVD] Investigation of [Fluid End Blocks] from [FRG] at 19–27, C-428-848, PD 220, bar code 3975458-01 (May 18, 2020).  BGH filed its complaint and moved for judgment on the agency record, contesting Commerce's final determination.  Compl., Mar. 29, 2021, ECF No. 7; [BGH] Mot. J. Agency R., Oct. 26, 2021, ECF No. 21.  After briefing was complete, the court sustained in part and remanded in part Commerce's final determination.  BGH I, 600 F. Supp. 3d at 1248,

---

[1] BGH challenged Commerce's determination that the following programs are countervailable: 1. Stromsteuergesetz ("Electricity Tax Act"), 2. Energiesteuergesetz ("the Energy Tax Act"), 3. Erneuerbare-Energien-Gesetz ("EEG Program"), 4. Kraft-Wärme-Kopplungsgesetz ("KWKG Program"), 5. The European Union's ("EU") Emissions Trading System ("ETS Program"), 6. The EU ETS Compensation of Indirect $CO_2$ Costs Program ("$CO_2$ Compensation Program"), and 7. Konzessionsabgabenverordnung ("KAV Program").  [BGH] Rule 56.2 Mem. Supp. Mot. J. Agency R. at 7, 21, 30, 39–40, Oct. 26, 2021, ECF No. 22.

1258, 1269. Specifically, the court remanded Commerce's determination: (i) with respect to its calculations of the CVD rates for the provisions of the Electricity Tax Act and the Energy Tax Act because Commerce failed to address BGH's costs of complying with those provisions, id. at 1258; and (ii) that the KAV Program constitutes a specific subsidy because Commerce failed to explain how that program favors certain industries over others and did not address whether the program criteria are economic in nature and horizontal in application, id. at 1269. The court sustained Commerce's determinations that the following programs constitute countervailable subsidies: (i) the Electricity Tax Act and the Energy Tax Act, id. at 1252–57; (ii) the EEG Program and KWKG Program reduced surcharges under the Special Equalization Scheme, id. at 1259–62; (iii) the ETS Program, id. at 1262–65; and the (iv) the $CO_2$ Compensation Program, id. at 1266–67. For those programs other than the Electricity Tax Act and the Energy Tax Act, the court also sustained Commerce's CVD rate calculations. Id. at 1259–67. Additionally, the court held that Commerce had properly initiated and developed its CVD investigation and that BGH failed to establish ex parte communications had occurred in the CVD investigation or that the record was incomplete. Id. at 1251–52.

Commerce filed its Remand Results on January 10, 2023. In its Remand Results, Commerce: (i) does not alter the final calculated subsidy rates for BGH's costs of compliance with the Electricity Tax Act and the Energy Tax Act and finds it unnecessary to reopen the record for the parties to submit further evidence,

Remand Results at 4–8; and (ii) continues to find that the KAV Program constitutes a specific subsidy, id. at 8–10.

BGH argues that Commerce fails to comply with the court's instructions by not accounting for BGH's costs of compliance with the Electricity Tax Act and the Energy Tax Act and by not reasonably explaining its conclusion that the KAV Program constitutes a specific subsidy. [BGH] Comments Opp. [Remand Results] at 1–17, Feb. 23, 2023, ECF No. 53 ("BGH's Comments"). Defendant and Defendant-Intervenors argue that the court should sustain Commerce's remand redetermination because cost of compliance is not one of the permissible types of countervailable subsidy offsets and because the KAV Program is specific to a subset of special contract customers. Def.'s Resp. to Comments on [Remand Results] at 4–10, Mar. 27, 2023, ECF No. 54 ("Def. Resp."); Def.-Int.'s Reply to [BGH's Comments] at 2–8, Mar. 27, 2023, ECF No. 55 ("Def-Int. Reply").

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to section 516A of the Tariff Act of 1930,[2] as amended, 19 U.S.C. § 1516a(a)(2)(A)(i)(II) (2018), and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final determination in an administrative review of a CVD order. "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial

---

[2] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (quotation marks omitted).

## DISCUSSION

### I.    Electricity and Energy Tax Acts

On remand, Commerce maintains the final calculated subsidy rates for the Electricity and Energy Tax Acts because Commerce concludes it is not required to incorporate offsets for costs of compliance into its subsidy rate calculations. Remand Results at 4–7. Additionally, Commerce finds it unnecessary to reopen the record for the parties to submit evidence on BGH's costs of compliance. Id. at 8. BGH argues that Commerce fails to comply with the court's instructions because it does not reasonably explain why BGH's costs of complying with the Electricity and Energy Tax Acts do not constitute a required offset.[3] BGH Comments at 1–8. For the following reasons, the court sustains Commerce's remand redetermination that BGH's costs of compliance with the Electricity and Energy Tax Acts do not constitute a permissible offset.

---

[3] BGH also argues, without citation, that Commerce fails to comply with the court's ruling by not reopening the record. BGH Comments at 1. The court does not reach BGH's argument regarding the record because the court determines Commerce's exclusion of BGH's costs of compliance is reasonable.

The court remanded Commerce's failure to address BGH's costs of compliance with the Electricity Tax Act and the Energy Tax Act for Commerce to consider these costs in the first instance. BGH I, 600 F. Supp. 3d at 1258. Section 1677(6) states the agency may offset "any application fee, deposit, or similar payment paid in order to qualify for, or to receive, the benefit of the countervailable subsidy . . . ." 19 U.S.C. § 1677(6)(A). The phrase "application fee or similar payment" can be interpreted narrowly or broadly. For example, Defendant argues that offsets are expressly limited to application fees, deposits, or similar payments. Def. Resp. at 7. Defendant-Intervenors further state that permissible offsets do not included expenses, which "are not even 'payments' at all." Def.-Int. Reply at 5. Conversely, BGH argues a tax or an energy management system constitutes a similar payment made in order to obtain a subsidy. BGH Comments at 3. Thus, Congress has delegated to Commerce the determination of which offsets are permissible under § 1677(6). See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 843–45 (1984).

On remand, Commerce addresses BGH's cost of compliance, explaining that it interprets "any application fee, deposit, or similar payment paid in order to qualify for, or to receive, the benefit of the countervailable subsidy," 19 U.S.C. § 1677(6)(A), to exclude offsets for costs to comply with government laws and regulations such as climate change measures, including costs incurred to participate in government programs under those measures. Remand Results at 4–5. The list of permissible offsets is "narrowly drawn and . . . all inclusive," id. at 5 n.21 (citing Trade

Agreements Act of 1979, S. Rep. No. 96-249, at 85–86 (1979), as reprinted in 1979 U.S.C.C.A.N. 381, 471–72), meaning BGH's costs of compliance with the Electricity Tax Act and Energy Tax Act would not be included. Commerce determines that "[o]ffsets for costs that a firm incurs to comply with a government's climate change measures or to participate in government programs under the measures do not fall within these three categories in the Act." Remand Results at 5. Because § 1677(6) specifies that "fees" and "deposits" may be offset, it is reasonable to interpret the subsequent phrase "or similar payment paid" as restricting offsets to payments of the same type—direct payments to the agency providing the benefit.

Commerce's narrow interpretation is also reasonable because Commerce views a subsidy as distinct from measures taken to qualify for the subsidy. See Remand Results at 7, 7 n.32. In support of its interpretation, Commerce cites the 1998 Final Preamble's example of new environmental restrictions requiring a firm to purchase new equipment to adapt its facilities and issuing subsidies to purchase the equipment, but which do not fully cover the total cost. Remand Results at 7. The Preamble states that receiving subsidies and acquiring the new equipment constitute separate actions for the purposes of offsets, despite leaving the firm with overall higher costs. Countervailing Duties, 63 Fed. Reg. 65,348, 65,361 (Nov. 25, 1998) (final rule).

Commerce's interpretation conforms with its practice. In responding to BGH's remand comments, Commerce notes it previously rejected arguments to apply similar types of offsets as either application fees or similar payments.[4] See Remand Results at 10–12. Thus, Commerce states in past cases it evaluated subsidies without accounting for any burden such as compliance costs. See id. at 7, 7 n.32. For example, a logging tax was not an application fee or deposit because Commerce determined the logging tax, and the tax credit benefit resulting from paying the logging tax, were two separate actions. Id. at 11–12; see Certain Softwood Lumber Products from Canada, 84 Fed. Reg. 32121 (July 5, 2019) (final results of CVD expedited review), and accompanying Issues and Decision Mem. at 47–48, C-122-858, bar code 3855675-01 (June 28, 2019) (Commerce has only provided offsets in limited circumstances because the statute is "clearly limited to an application fee, deposit, or similar payment"). Thus, Commerce's interpretation is both reasonable in light of the authority delegated to it and consistent with past practice.

---

[4] See, e.g., Issues and Decisions Mem. for Hot-Rolled Steel Flat Products from the Republic of Korea at 18, C-580-884, bar code 4238418-02 (May 3, 2022) (burdens such as environmental obligations do not qualify for offset); Decision Mem. for Cut-To-Length Carbon-Quality Steel Plate from the Republic of Korea at 11–12, C-580-837, bar code 4194857-02 (Dec. 23, 2021) (Commerce does not account for burden imposed on firm that is related to the granting of the subsidy); Issues and Decision Mem. for Softwood Lumber Products from Canada at 47, C-122-858, bar code 3855675-01 (June 28, 2019) (taxes are not offset because they are not an application fee or a deposit); Issues and Decision Mem. for Uncoated Groundwood Paper from Canada at 217–18, C-122-862, bar code 3738034-01 (Aug. 1, 2018) (costs from lost production is not one of the enumerated offsets); Issues and Decision Mem. for Large Residential Washers from the Republic of Korea at 47, C-580-869, bar code 3111550-01 (Dec. 18, 2012) (tax is not offset because it is a consequence of the benefit rather than a prerequisite).

BGH cites Commerce's reasoning in <u>Washers from Korea</u> as support for BGH's argument that costs of compliance with climate change measures should be offset in Commerce's calculation of the CVD rate. BGH Comments at 3; <u>see</u> Issues and Decision Mem. for Large Residential Washers from the Republic of Korea at 47, C-580-869, bar code 3111550-01 (Dec. 18, 2012); <u>see also</u> <u>Large Residential Washers from the Republic of Korea</u>, 77 Fed. Reg. 75,975 (Dec. 26, 2012) (final affirm. CVD determination). BGH's argument is inapposite. Although Commerce determined that the tax in <u>Washers from Korea</u> was not a prerequisite to receiving a benefit the way an application fee might be and therefore the tax would not be offset, being a prerequisite by itself is insufficient to constitute an application fee or similar payment. At best, <u>Washers from Korea</u> supports the idea that a tax cannot be an application fee or similar payment unless it is a prerequisite, which is a necessary but not sufficient requirement to incorporate offsets for a tax in the CVD rate. Thus, Commerce's interpretation is reasonable and consistent with its past practice. Accordingly, Commerce's calculation is supported by substantial evidence.

## II.    KAV Program

On remand, Commerce continues to find the KAV Program specific as a matter of law. Remand Results at 8–10. BGH argues that Commerce again fails to reasonably explain its determination that the program is <u>de jure</u> specific in light of the record. BGH Comments at 8–17. For the following reasons, the court remands Commerce's remand redetermination for further explanation or reconsideration.

Court No. 21-00080 Page 11

Where an authority or legislation expressly limits access to a subsidy to a sufficiently small number of enterprises, industries, or groups, the subsidy is specific as a matter of law.[5] 19 U.S.C. § 1677(5A)(D)(i); see Statement of Administration Action for the Uruguay Round Agreements Act, H.R. Rep. No. 103-316 (1994), as reprinted in 1994 U.S.C.C.A.N. 4040, 4242 ("SAA"). The statute provides no formula for determining when the number of enterprises, industries, or groups is so limited as to be de jure specific. SAA at 4242. However, the SAA explains that the specificity provision should be applied as an initial screening method to winnow out only those subsidies that truly are broadly available and widely used throughout an economy. Id. Moreover, the statute provides a safe harbor for subsidies that are "not specific as a matter of law." 19 U.S.C. § 1677(5A)(D)(ii).

Subsidies are not specific as a matter of law where the subsidy program provides: (1) "objective criteria or conditions governing the eligibility for, and the amount of," the subsidy; (2) "eligibility is automatic;" (3) "the criteria or conditions for eligibility are strictly followed;" and (4) "the criteria or conditions are clearly set forth in the relevant statute, regulation, or other official document." 19 U.S.C. § 1677(5A)(D)(ii). Objective criteria are criteria that are "neutral and that do not favor one enterprise or industry over another." Id.; see SAA at 4243.

---

[5] Any reference to an enterprise or industry includes a group of such enterprises or industries. 19 U.S.C. § 1677(5A).

Neutral in this context means "economic in nature and horizontal in application, such as the number of employees or the size of the enterprise." See SAA at 4243. "Economic" relates to the consumption of goods and services. Economic, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/economic (last visited May 4, 2023) ("1 a : of, relating to, or based on the production, distribution, and consumption of goods and services"); Economy, Black's Law Dictionary (11th ed. 2019) ("1. The management or administration of the wealth and resources of a community (such as a city, state, or country)"). "Horizontal" in this context means applying to similar enterprises uniformly. See Horizontal, Oxford English Dictionary, www.oed.com/view/Entry/88460 (last visited May 4, 2023) ("3. a. Uniform; producing or based on uniformity. Chiefly U.S."); Horizontal, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/horizontal (last visited May 4, 2023) ("2 : relating to, directed toward, or consisting of individuals or entities of similar status or on the same level"). Thus, neutral criteria are those which are based upon factors relating to the consumption of goods or services and are uniformly available across industries.

Here, the issue is whether the KAV Program's criteria are economic in nature and horizontal in application. On remand, Commerce concludes the program criteria are not economic in nature and horizontal in application because they favor "a specific subset of special contract customers based on their electricity prices." Remand Results at 10. Special contract customers are those who use large amounts of

electricity.[6] See BGH I, 600 F. Supp. 3d at 1268. It would appear that Commerce concludes that the purchase of large amounts of electricity is neither economic (relating to the consumption of goods or services) nor horizontal (uniformly available across industries). The court does not understand the basis for Commerce's conclusion with respect to special contract customers. Commerce fails to explain how the amount of electricity consumed or the electricity prices paid by companies are not economic in nature. If economic in nature relates to the consumption of goods and services, prices paid and resources consumed seem to fit the plain meaning of economic in nature.

Further, Commerce fails to explain how criteria based solely on electricity consumption and pricing is not horizontal in application. It may be the case that there are a limited numbers of industries that consume large amounts of electricity, but such a fact would be relevant to the question of whether a subsidy was de facto specific, not whether it was specific as a matter of law. See 19 U.S.C. § 1677(5A)(D)(iii).

Commerce argues the KAV Program favors certain enterprises over others— those special contract customers with electricity prices below the marginal price

---

[6] The Government of Germany defines the term "special contract customer" as "all customers, whose measured power exceeds 30 kilowatts in at least two months of the billing year and whose annual consumption is more than 30,000 kilowatt hours." See Resp. [FRG] and the Fed. Ministry for Economic Affairs and Energy of the [FRG] to the Suppl. Questionnaire at 2–3, C-428-848, PD 270, bar code 4030747-01 (Sept. 22, 2020).

agreed to by the network operator and the municipality. Remand Results at 9. Commerce's argument suggests that the KAV Program's criteria are vertical in application rather than horizontal. See id. at 9 ("we find that the FRG favors certain enterprises over others through the KAV Program"). Commerce's use of the word "favors" is misplaced. "Favors" in the de jure context would mean that the law itself singled out industries for special treatment. See Taizhou United Imp. & Exp. Co. v. United States, 475 F. Supp. 3d 1305, 1316 (Ct. Int'l Trade 2020) (sustaining Commerce's determination of de jure specificity where legislation expressly limited access to subsidies). That one industry received a benefit and another did not does not mean the first industry was favored. It only means that the industry qualified under the criteria. However, for the KAV Program's criteria to be vertical in application, the criteria would need to "expressly limit" the program's application to specifically named enterprises or industries or group of enterprises or industries. See 19 U.S.C. § 1677(5A)(D)(i). The program criteria here do not expressly limit the program's application to specific enterprises or industries. For the subsidy program to be de jure specific in light of § 1677(5A)(D)(ii), Commerce must explain how the program's criteria are neither economic in nature nor horizontal in application. Commerce's remand redetermination that the KAV Program is de jure specific is remanded for further explanation or reconsideration.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Commerce's Remand Results are sustained with respect to its calculations of the CVD rates for the Electricity Tax Act and the Energy Tax Act; and it is further

**ORDERED** that Commerce's Remand Results are remanded for further explanation or reconsideration consistent with this opinion with respect to its determination that the KAV Program is a specific subsidy; and it is further

**ORDERED** that Commerce shall file its second remand redetermination with the court within 90 days of this date; and it is further

**ORDERED** that Commerce shall file the administrative record within 14 days of the date of filing of its second remand redetermination; and it is further

**ORDERED** that the parties shall file any comments on the second remand redetermination within 30 days of the date of filing of the second remand redetermination; and it is further

**ORDERED** that the parties shall have 30 days to file their replies to the comments on the second remand redetermination; and it is further

**ORDERED** that the parties shall file the joint appendix within 14 days of the date of filing of responses to the comments on the second remand redetermination.

                                         /s/ Claire R. Kelly
                                         Claire R. Kelly, Judge

Dated:       May 9, 2023
             New York, New York